**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

**MARC LOMAN and NATASHA LOMAN,**

       **Plaintiffs,**

    **v.**                                 **Civil Action No. 1:25-cv-02099-MSN-LRV**

**BLAZIN WINGS, INC. d/b/a BUFFALO**
**WILD WINGS GRILL & BAR,**

       **Defendant.**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant Blazin Wings, Inc. d/b/a Buffalo Wild Wings Grill & Bar ("BWW"), submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs Mark Loman and Natasha Loman's ("Plaintiffs" or "The Lomans") Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, in its entirety, with prejudice.

In November 2024, Plaintiffs patronized a restaurant operated by BWW in Woodbridge, Virginia. Plaintiffs allege they discovered, hours after they left the restaurant, that they were referred to as "nigs" as the name on their order placed by the manager on duty. Based on this one isolated interaction, Plaintiffs now claim: (1) they were subjected to harassment based on racial or ethnic animosity (in violation of Va. Code § 8.01-42.1); (2) BWW violated the Virginia Consumer Protection Act ("VCPA") (Va. Code § §59.1-196); and (3) they were subjected to intentional infliction of emotional distress ("IIED").

As explained more fully below, Plaintiffs' Complaint against BWW fails as a matter of law because it is rife with conclusory allegations and devoid of any facts sufficient to state a claim against BWW under any legal theory.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

The Lomans are African-American. Compl. ¶ 12, ECF No. 1-1. On November 2, 2024, the Lomans visited the Buffalo Wild Wings location at 14466 Potomac Mills Road in Woodbridge, Virginia (Store 280). *Id.* at ¶¶ 6-7. The Lomans placed a food order with the manager on duty, who did not ask the Lomans for their names when taking the order. *Id.* at ¶ 8. The Lomans received their food without issue, ate and took the leftovers home. *Id.* at ¶ 9.

Later that same day, the Lomans discovered the word "nigs" on the takeout bag and receipt for their order. *Id.* at ¶¶ 11-12. According to Plaintiffs, "nigs" is a shortened version of a racial epithet referring to African Americans, "ni**ers." *Id.* at ¶ 13. Mr. Loman contends that this language was "especially painful" for him as a disabled veteran from the Deep South who has previously been subjected to racial animus and harassment in the past. *Id.* at ¶ 14.

Following this discovery, the Lomans contacted BWW. *Id.* at ¶ 15. On November 3, 2024, BWW's Vice President of Northern Operations ("VP") called the Lomans and  allegedly "admitted" that the manager had "intentionally" placed the "racial slur" on their order. *Id.* at ¶¶ 16-17. The VP also allegedly informed the Lomans that BWW fired the manager as a result of the incident. *Id.* at ¶ 18.

On October 27, 2025, the Lomans filed suit, alleging three causes of action under Virginia law in Prince William County Circuit Court and served BWW with the Complaint and Summons on November 3, 2025. ECF No. 1-1. On November 19, 2025, BWW timely removed the matter to

---

[1] The facts set forth in this brief are based on the allegations in the Lomans' Complaint. For purposes of this motion, the brief assumes, as it must under Federal Rule of Civil Procedure 12(b)(6), that the facts alleged in the Complaint are true. By citing these facts or restating them here, BWW does not concede – for the purposes of this litigation or for any other purpose – that the allegations are true, in whole or in part.

this Court. ECF No. 1.  BWW now moves to dismiss the Complaint because Plaintiffs fail to state a claim for any of the counts brought against it.

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a court may dismiss a complaint when the plaintiff has failed to state a claim for which the court may grant relief.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim . . . that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

The allegations of a complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In other words, a plaintiff must allege "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Indeed, the plaintiff must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Twombly*, 550 U.S. at 555.  To that end, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 554-55 (internal quotations and citations omitted).

Facts alleged in the complaint are to be construed in the light most favorable to the plaintiff. *See, e.g.*, *Lokhova v. Halper*, 995 F.3d 134 (4th Cir. 2021).  But the Court need not accept the truth of "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

At bottom, the pleading must "nudge[ the] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Therefore, if the "complaint pleads facts that are 'merely consistent with' a defendant's liability it 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "[f]ollowing *Twombly*, if there is an 'obvious alternative explanation' for each of the actions alleged that suggests lawful conduct, the complaint has not satisfied the plausibility standard." *Int'l Ass'n of Machinists and Aerospace Workers v. Haley*, 482 F. App'x 759, 764 (4th Cir. 2012) (citing *Twombly*, 550 U.S. at 567).

## III.    LEGAL ARGUMENT

### A.    Plaintiffs' Claim under the Virginia Consumer Protection Act is Deficient as a Matter of Law and Must be Dismissed (Count II)

The Virginia Consumer Protection Act ("VCPA") is "remedial legislation to promote fair and ethical standards of dealings between suppliers and the consuming public." Va. Code § 59.1-197. To state a claim under the VCPA, a plaintiff must allege (1) fraud (2) by a supplier (3) in connection with a consumer transaction. *Borg v. Warren*, 545 F. Supp. 3d 291, 322 (E.D. Va. 2021). Indeed, to establish the first element, a plaintiff must prove that the defendant acted with an intent to deceive or otherwise mislead, *i.e.,* with fraudulent intent, as to a material fact on which the plaintiff relied to his detriment and which resulted in measurable damages. *Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 185 (E.D. Va. 2005).

The Lomans' VCPA claim fails at the first element. Plaintiffs contend that the manager on duty "intentionally misrepresented" the Lomans' name when entering "nigs" on the order receipt in violation of the VCPA. Compl. ¶ 36. However, this argument misappropriates the intention behind the VCPA and what constitutes "fraudulent intent" under the statute. The Complaint contains no factual allegations concerning which "false representation" the Lomans relied on when

purchasing and consuming food from Defendant's restaurant. The Complaint does not plausibly allege that a representative of BWW made a deceptive, fraudulent or false statement, or misrepresentation that somehow misled them in making their purchase. Nor does the Complaint contain any facts – as opposed to conclusions – that plausibly allege that the manager intended to deceive or otherwise mislead them. As stated above, the Plaintiffs admit that they ordered their food and took their leftovers home. *Id.* at ¶ 9. Thus, based on Plaintiffs own allegations, they *could not* have relied on any false or fraudulent statements to their detriment. As a matter of law and according to Plaintiffs allegations, no violation of the VCPA took place.

**B.      Plaintiffs Have Not Sufficiently Pled Facts to Support Their Claim under Virginia Code § 8.01 – 42.1 (Count I)**

**1.      An Isolated Incident is Insufficient to Constitute "Intimidation or Harassment"**

Virginia Code § 8.01 – 42.1(A) prohibits intimidation or harassment "motivated by racial . . . or ethnic animosity." Courts in this jurisdiction have found a claim brought under this statute satisfied when the defendant "used racial slurs and physically attacked [the plaintiffs] because of their race," *Frazier v. Cooke*, No. 4:17-CV-54, 2017 WL 5560864, at *7 (E.D. Va. Nov. 17, 2017); when a defendant's employee "harassed plaintiff based on racial animus because he apprehended her, used a racial slur, and later implied that African-Americans came into [the store] to steal," *Berry v. Target Corp.*, 214 F. Supp. 3d 530, 535 (E.D. Va. 2016); and when a skating rink, which was under a consent decree for denying equal access to public accommodations, singled the plaintiff out for discriminatory treatment and called the police on him. *Johnson v. Hugo's Skateway*, 949 F.2d 1338 (4th Cir. 1991), *on reh'g*, 974 F.2d 1408 (4th Cir. 1992).

Here, Plaintiffs rest their allegations on a single, isolated and abbreviated word on their takeout bag and receipt to attempt to show that one of BWW's employees harassed them because of their race.  This hardly amounts to "racial or ethnic intimidation or harassment" as delineated

in the statute. The Complaint is devoid of any factual allegations that the manager on duty said *anything* to them when taking the Lomans' order. To be sure, Plaintiffs only allege that the manager "did not ask for [their] names when taking the order" and that they "received their food, ate, and took the leftovers home." Compl. ¶¶ 8-9. A fair reading of Plaintiffs' Complaint indicates that the purported "hate speech" did not in any way impact their receipt of their order, the ability to eat their food in the restaurant, or take their leftovers home.  What is more, Plaintiffs failed to recognize that the term appeared on their order until hours later after they returned home. *Id.* at ¶ 10. Plaintiffs' claim should fail on this basis alone.

### 2.    The Employee's Alleged Conduct Fell Outside of Her Scope of Employment, And Therefore Cannot Be Imputable to BWW

Assuming, *arguendo*, that the employee's acts constituted "racial or ethnic intimidation and harassment" in violation of Virginia Code § 8.01 – 42.1, the Plaintiffs' claim still fails because they employee's actions were outside of the scope of her employment. Plaintiffs, in a conclusory fashion, contend that the manager on duty was employed at BWW as a kitchen manager and therefore acting within the scope of her employment when she entered "nigs" as the Lomans' order name. Compl. ¶¶ 20-21. Under prevailing law, however, this is not the case.

Virginia courts have previously held that because Virginia Code § 8.01 – 42.1 does not address the issue of an employer's liability for an employee's violation of the statute, the court must look to common law principles of *respondeat superior* to resolve the issue. *Williams v. Dowell*, 34 Va. Cir. 240 (1994). Under the doctrine of *respondeat superior*, an employer is liable for the tortious acts of his employee if the employee was performing his employer's business and acting within the scope of employment and in furtherance of the employer's business. *Id.* (quoting *McNeill v. Spindler*, 191 Va. 685, 694-95 (1958)). "Generally, an act is considered to be within the scope of employment if: (1) it was expressly or impliedly directed by the employer, or is

6

naturally incident to the business, and (2) it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interests, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account." *Id.* (quoting *Kensington Assoc. v. West*, 234 Va. 430, 432 (1987)).

Here, the alleged conduct of the employee, namely placing an abbreviated racial slur on a bag and order receipt, cannot reasonably be inferred as acts within the scope of employment. To further illustrate, in *Williams*, the plaintiffs alleged that when they arrived at a Pizza Hut to have dinner, Dowell (the waitress on duty) refused to serve them solely because of their race. *Williams*, 34 Va. Cir. at 240. The plaintiffs (Black), specifically alleged that Dowell (White) "repeatedly ignored plaintiffs' requests to be seated, sneered at them, and otherwise refused to serve them solely because of their race." *Id.* The plaintiffs further alleged that when Williams tried to complain to the restaurant's manager, Dowell stated, "You ni**ers think you can get away with anything" and thereafter "attack[ed] Williams, stab[bed] her with a pencil, and with great force deliver[ed] blows with arms and hands to all parts of her body." *Id.* The court sustained Pizza Hut's demurrer to the plaintiffs' harassment claim under Virginia Code § 8.01 – 42.1, concluding that under the doctrine of *respondeat superior*, "Dowell's acts of racial intimidation, harassment, and violence were such great and unusual deviations from Pizza Hut's business that they [could] not as a matter of law be considered as acts undertaken in the scope of employment that would make Pizza Hut liable [for the employee's conduct]." *Id.*

Relying on the court's reasoning in *Williams,* the Alexandria Circuit Court reached the same conclusion in *Salmeron v. Wendy's Int'l. Inc.*, 70 Va. Cir. 247 (2006) on a plaintiff's claim of racial and ethnic harassment. In *Salmeron*, the plaintiff attempted to hold the individual, as well

as corporate defendants, liable under Virginia Code § 8.01 – 42.1 when alleging: "[b]y following [him] into the [r]restaurant's parking lot and verbally confronting [the plaintiff] over his use of the Spanish language, the defendants assaulted him "because of their animosity towards [the plaintiff's] racial, cultural and ethnic background." *Id.* The court held that the plaintiff's factual allegations were insufficient to state a viable cause of action because they were a "great and unusual" departure from Wendy's business. *See id.* As a result, the court sustained each defendant's demurrer on this count. *Id.*

Following the precedent set forth in *Williams* and *Salmeron*, this Court should also reach the same conclusion. Aside from the fact that the alleged single act of writing an abbreviated racial slur on the takeout bag and receipt order pales in comparison to the conduct alleged in *Williams* and *Salmeron*, the Lomans advance no plausible allegation to suggest that the employee was acting within the scope of her employment in doing so. BWW is in the business of providing food and exceptional customer service to its customers. The employee's racial epithet, as alleged, evinces a similar racial bias that is disconnected from BWW's business that the court in *Williams* and *Salmeron* determined could not be regarded as within the scope of the employee's employment. Certainly, BWW does not condone any such conduct in any of its restaurants and as Plaintiffs note in their Complaint, BWW immediately terminated the employee after becoming aware of the incident. Compl. ¶ 18. Taking Plaintiffs' allegations in the light most favorable to them, these facts simply do not support a reasonable inference that any unlawful harassment or intimidation under Va. Code § 8.01 – 42.1(A) occurred that is imputable to BWW.  For these reasons too, Count I of Plaintiffs' Complaint should be dismissed.

### C.    Plaintiffs Have Not Alleged Sufficient Facts That Make it Plausible that BWW Subjected Them to Intentional Infliction of Emotional Distress (Count III)

To state a claim for IIED under Virginia law, a plaintiff must plead that (1) the wrongdoer's conduct was intentional or reckless, (2) the conduct was outrageous or intolerable, (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe. *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 757 (E.D. Va. 2016) (citing *Ogunde v. Prison Health Servs., Inc.*, 645 S.E. 2d 520, 526 (Va. 2007)).

As a preliminary matter, Virginia law disfavors the tort of IIED. *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). Indeed, "[IIED] is 'not favored' in the law, because there are inherent problems in proving a claim alleging injury to the mind or emotions . . . .'" *Williams v. Agency, Inc.*, 997 F. Supp. 2d 409, 414 (E.D. Va. 2014) (quoting *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 343 (Va. 2008)). Under federal pleading standards, plaintiffs must allege facts sufficient to plausibly support each of the four elements of an IIED claim. *Williams v. AM Lapomarda*, Civil Action No. 3:19cv631, 2020 WL 3643466 (E.D. Va. July 6, 2020). In this case, Plaintiffs' conclusory pleading fails to satisfy the requisite elements of the cause of action, and therefore, their IIED claim should be dismissed.

### 1.    Plaintiffs Have Not Alleged Extreme or Outrageous Conduct to Sufficiently State an IIED Claim

Taken as a whole, Plaintiffs' allegations cannot reasonably be regarded as so extreme and outrageous to sufficiently state a claim of IIED. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006). Indeed, liability for IIED has been found only where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized society. *Id.* at 33 (quoting *Russo*, 400 S.E. 2d at 162). An alleged abbreviation for a racial slur written as the name on a takeout bag and receipt falls well short of this standard.

Again, Plaintiffs rely on one isolated interaction with one manager while visiting a BWW restaurant. Plaintiffs merely allege that "nigs" was written on their takeout bag and receipt, without any further factual detail to support their claims. Under the standards set forth in Virginia case law, a plaintiff cannot obtain relief for "mere insults, indignities, threats, annoyances, [and] petty oppressions," which plaintiffs must necessarily be expected and required to be hardened to." *Simmons v. Norfolk W. Ry.*, 734 F. Supp. 230, 232 (W.D. Va. 1990) (quoting Restatement (Second) of Torts § 46 cmt.d). "As with other admittedly hurtful conduct, racial allusions may be found not actionable as at worst mere insult, or actionable as intolerably atrocious conduct, depending upon the context." *Gaiters v. Lynn*, 831 F.2d 51, 53 (4th Cir. 1987) (quoting Restatement (Second) of Torts § 46 cmt.d). At best, this alleged conduct is more akin to "mere insult" as opposed to the "outrage" required to give rise to tort liability. *See id.* at 54.

### 2. Mrs. Loman Neglects to Plead Any Facts to Support Her Assertion that She Has Suffered Emotional Distress

While Mrs. Loman might have well been unhappy with the word "nigs" that appeared on her takeout bag and receipt for the Loman's food order, she does not actually allege that suffered any emotional distress, let alone emotional "severe emotional distress." *See Womack v. Eldridge*, 215 Va. 338, 210 S.E.2d 145, 148 (Va. 1974) (finding the fourth element of an IIED claim requires that the resulting "emotional distress was severe"). In order to recover on her emotional distress claim, Mrs. Loman must plead facts sufficient to establish that her emotional distress is so extreme that "no reasonable person could be expected to endure it." *Russo*, 400 S.E. 2d at 163. The Virginia Supreme Court has found that even allegations that a plaintiff was nervous, could not sleep,

experienced stress and its physical symptoms, withdrew from activities and was unable to concentrate at work were insufficient to plead "severe emotional distress." *Id.*

The Complaint is devoid of *any facts* concerning Mrs. Loman's emotional distress, and she cannot rely on Mr. Loman's alleged emotional distress to satisfy her claim. The one conclusory assertion that "the Lomans suffered severe emotional distress, pain, and suffering" falls far below the level of emotional distress symptoms found to be insufficient in *Russo*. Simply put, this assertion adds no value to Mrs. Loman's claim because it is nothing more than a formulaic recitation of the elements of a cause of action expressly rejected by the Supreme Court in *Twombly.* *Twombly*, 550 U.S. at 555. Accordingly, Mrs. Loman has failed to state a claim for IIED.

### 3.     Mr. Loman's Claimed Emotional Distress is Insufficient to State a Viable Intentional Infliction of Emotional Distress Claim

The IIED claim set forth in Plaintiffs' Complaint fails for the additional reason that, with respect to Mr. Loman, he has failed to allege that he suffered the type of severe emotional distress predicate to stating a legal claim for relief. As the Supreme Court of Virginia has explained, emotional distress includes "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Hecklenlaible v. Va. Peninsula Reg'l Jail*, 491 F. Supp. 2d 544, 552 (quoting *Russo*, 400 S.E. 2d at 163). But again, as the court made clear in *Russo*, liability arises "only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Russo*, 400 S.E. 2d at 163.

Here, Mr. Loman repeatedly alleges throughout the Complaint that as a result of BWW's alleged actions, he "missed work and sought counseling." Compl. ¶¶ 26, 38, 51. Mr. Loman does not specify when or the frequency that he missed work or sought medical treatment. Moreover, Mr. Loman does not allege that he ever experienced an objective physical injury or that he was

confined to a hospital or home for any elongated period of time. Without more, Mr. Loman cannot state a claim for IIED, either.  Accordingly, Count III of the Complaint should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, BWW respectfully requests that this Court grant its Motion to Dismiss the Complaint with prejudice, and award it such other relief as the Court deems just and proper.

Dated: November 24, 2025                      Respectfully submitted,


                                              */s/ Yvette V. Gatling*
                                              Yvette V. Gatling (VSB No. 92824)
                                              Janea J. Hawkins (VSB No. 95202)
                                              LITTLER MENDELSON, P.C.
                                              1800 Tysons Boulevard, Suite 500
                                              Tysons Corner, VA 22102
                                              Telephone: 703.286.3143
                                              Facsimile: 703.842.8211
                                              ygatling@littler.com
                                              jhawkins@littler.com


                                              *Counsel for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all parties by electronic notification of the court's filing system on November 24, 2025 addressed as follows:

Dirk McClanahan
Robyn Reinhardt
MCCLANAHAN POWERS, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
dmcclanahan@mpclegal.com
rreinhardt@mpclegal.com

                                              */s/ Yvette V. Gatling*
                                              Yvette V. Gatling